(No. 14005.—Reversed and remanded.)

THE KANAWHA FUEL COMPANY, Plaintiff in Error, *vs.*
THE INDUSTRIAL COMMISSION *et al.*—(ADAM ELLISON,
Defendant in Error.)

*Opinion filed December 22, 1921.*

1. WORKMEN'S COMPENSATION—*when award made for partial incapacity is not supported by the evidence.* An award of six dollars per week for partial incapacity, as being fifty per cent of the difference between what an injured coal miner earned before he was injured and what he was able to earn afterwards, is not supported by evidence that after his injury he actually loaded an average of six and one-tenth tons of coal per day as against an average of six and nine-tenths tons before his injury.

2. SAME—*increase in rate of wage should not be considered in estimating amount of award for partial incapacity.* The fact that an employee actually earns more at loading coal after his injury than before, on account of an increase in the rate of wages per ton, should not be taken into account in estimating the amount of an award for partial incapacity.

WRIT OF ERROR to the Circuit Court of Perry county; the Hon. LOUIS BERNREUTER, Judge, presiding.

GEORGE W. DOWELL, (ROBERT DAVIS, of counsel,) for plaintiff in error.

A. W. KERR, and GEORGE R. STONE, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Defendant in error, Adam Ellison, an unmarried man, was employed by the plaintiff in error, the Kanawha Fuel Company, in its mine near DuQuoin, Perry county, and on July 9, 1919, he was injured by a fall of slate, coal and other substances from the roof, injuring his shoulder and

back and fracturing the sixth, seventh, eighth and ninth ribs on the left side. The parties were subject to the provisions of the Workmen's Compensation act and the injury arose out of and in the course of the employment. The application of Ellison for compensation was heard by an arbitrator, and at the time of the hearing the applicant had been furnished with medical service and paid $245. The only dispute before the arbitrator was whether and to what extent Ellison was then incapacitated from pursuing his usual and customary line of employment in the future. The arbitrator made an award in his favor of $12 per week for 13 and four-sevenths weeks for the period of total incapacity, and a further award of $6 per week for 402 and three-sevenths weeks for partial incapacity for pursuing his usual and customary line of employment. The arbitrator found that $6 per week was fifty per cent of the difference between what Ellison earned before the injury and what he was able to earn afterward, which was a finding on the disputed question. On a review by the Industrial Commission it was ordered that the decision of the arbitrator stand as the decision of the Industrial Commission, and on a writ of *certiorari* out of the circuit court the award was confirmed.

The question now to be determined is whether there is any competent legal evidence in the record to sustain the finding and decision of the arbitrator, confirmed by the Industrial Commission, as to the extent of partial incapacity. The evidence related to the average amount which Ellison earned before the accident and the average amount which he was earning or was able to earn at the time of the hearing. He was employed to load coal and also to do incidental cleaning-up work. There was no evidence of any partial incapacity in performing the latter kind of work, but he testified that before the accident he was able to load ten or twelve tons of coal per day and five or six after-

300—39

wards; that he returned to work in the mine on October 13, 1919, and had worked pretty nearly every day the mines were in operation, and, in fact, worked every day until quite recently before the hearing. It was proved, and not disputed nor questioned by Ellison, that before he was injured he loaded an average of six and nine-tenths tons per day for twenty-three days, and that after returning to work he loaded an average of six and one-tenth tons for fifty-nine days. He was actually earning more money per day after the injury than before, but that was due to a difference in the rate per ton for loading, which before the accident was sixty-five cents per ton and afterwards seventy-four and one-half cents per ton. It was proper not to take into account the excess on account of the increased rate, and there was a slight difference in the number of tons loaded per day before and after the accident. The fractures were all healed and the ribs in natural position. There was no physical displacement or apparent objective disability, and the complaint was of pain and subjective symptoms. While Ellison gave an estimate of what he was able to do before and after the accident, he did not dispute in any manner or deny that he did actually load the number of tons before and after his injury as above stated, and the necessary conclusion is that what he did was the measure of his ability. There was therefore no competent evidence to justify a conclusion that $6 a week was fifty per cent of the difference between what Ellison earned before the injury and what he was able to earn afterward.

Counsel for defendant in error say that ample protection is afforded the plaintiff in error by the statutory provision for a review and reduction of the award if the evidence should justify it, but that is not an answer to the error assigned that the award is unsupported by competent evidence.

The judgment is reversed as to the award for partial incapacity and the cause is remanded to the circuit court. If

the defendant in error shall move to have his application remanded to the Industrial Commission for further consideration, the court is directed to allow the motion and remand the application accordingly.

      · *Reversed and remanded, with directions.*